JULY TERM, 1881, No. 96.                    FEBRUARY 20TH, 1882.

## The Western Assurance Company of Toronto *versus* Ackerman *et ux.*

1. The fact that a policy of insurance was made out in the name of a married woman, and that she was in possession of the goods insured at the time of the fire, was, in a suit by her on the policy, *prima facie* evidence, as against the defendant, of her ownership.

2. A policy of fire insurance provided that " the assured should, if required, submit to an examination or examinations under oath, by any person appointed by the company, and subscribe thereto, when the same is reduced to writing." An agent of the company testified that he met the husband and agent of the assured, and requested him to produce her. He further testified: " I said we desired to transact our business with her. He said he would do just as well, he was her husband; we could not see her, and, if we did, she didn't know any-

[The Western Assurance Company of Toronto v. Ackerman et ux.]

thing about it, and wouldn't give us any information." *Held*, that this was not evidence that the assured had refused to submit herself to examination under oath.

3. The Court charged the jury: The rule of law is that, when a company receives proofs of loss and makes objections to them, they are bound by the objections they make; and if these objections are met in the next proofs of loss, and the company then remain silent, they cannot afterwards raise new objections which existed at the time the first proofs were furnished. If, therefore, the company did retain proofs of loss dated 22d of March, 1879, and remained silent in regard to the invoices alleged not to be furnished, and made no objections thereto, the company are to be considered as waiving the defects as to form. *Held*, not to be error.

4. The defendant company offered to prove by its agent that the husband and agent of the assured "gave him a list of the parties and their places of business, from whom he alleged he had purchased the goods insured, and said to him he did not believe these firms would give him the bills, and directed him to go to these firms and get the bills for the goods; that the witness did take these names and places of business and go to them and ask them for bills, which they refused to give because no goods had been sold to A. (the agent) or the assured, and therefore they were unable to give such bills." The Court admitted the evidence only so far as to show that the agent of the assured gave the names of the parties from whom he alleged he had purchased; that the witness went to them, and that they refused to give the bills of invoice. *Held*, that the excluded testimony was hearsay and incompetent, and that the assured was not bound by the answers.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, STERRETT, and GREEN, JJ. TRUNKEY, J., absent.

Error to the Court of Common Pleas of *Lackawanna County.*

Debt, by David Ackerman and Betty Ackerman, his wife, in right of said wife, against the Western Assurance Company of Toronto. Canada, upon a policy of fire insurance.

On the 3d of August, 1878, the defendant company issued to Betty Ackerman a policy, amounting to $2500; $2000 upon stock of boots and shoes, manufactured and in process of manufacture, and $500 on machinery, tools, etc., in the second and third stories of a building in Scranton, Pa., occupied by the assured. $7500 additional insurance was permitted, which was equally divided between three other companies. Among the clauses of the policy were the following:

"The assured shall, if required, submit to an examination or examinations under oath, by any person appointed by the company, and subscribe thereto, when the same is reduced to writing; and shall also produce their books of account, bills, invoices, and other vouchers, and exhibit the same for examination at the office of the company, and permit extracts and copies thereof to be made. The assured shall also produce certified copies of all bills and invoices, the originals of which have been lost.

"Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the company, and, as soon there-

after as possible, render a particular account of such loss, signed and sworn to by them, stating whether any and what insurance has been made on the same property, giving copies of the written portion of all policies thereon; also the actual cost value of the property, and the interest thereon; for what purpose and by whom the building insured, or containing property insured, and the several parts thereof, were used at the time of the loss; when and how the fire originated; and shall also produce a certificate of a magistrate or notary public, stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has without fault sustained loss on the property insured to the amount, which such magistrate or notary shall certify."

Upon the trial in the Court below, before HAND, J., the plaintiff offered the policy in evidence, and called *David Ackerman,* who testified, *inter alia,* substantially:

"The property insured was destroyed. The fire occurred February 23d, 1879. The same morning I notified the agent, Smith. I got the policy in August, 1878. Smith issued them. I got it about the 10th of August for Mrs. Betty Ackerman, my wife. Smith was there when the policies were issued, and he looked over the stock and machinery. We had taken an inventory about August 1st, 1878. The value of the stock of goods at the time of the fire amounted to between $15,000 and $16,000. That includes machinery. Take about $2500 for machinery out of it, and that will tell the goods."

In rebuttal he testified:

"Geiser bought in the property for Mrs. Ackerman. She gave a check for it from her money. The property was in the factory and remained there. She was in possession of it. The goods Betty Ackerman bought were stored here in this building, $16,900 worth. They were moved back into the factory and went in there, and what were not sold were there at the time of the fire. What was left at the time of the fire can be seen by the inventory."

*Jacob Geiser,* for the plaintiff, testified:

"I was bookkeeper and done the shipping, August 1st, 1878. Bookkeeper for Mrs. Ackerman."

In rebuttal he testified:

"I think I know when Mrs. Ackerman's jobbing goods were removed from this building to the storehouse. I assisted in removing them. I think it was in May or June, 1877. I know about how much we moved back, and I know about how much was there. I think there was about $15,000 worth at the constable sale of Ackerman & Co., Limited.

Mrs. Ackerman told me to buy the goods in for her and she would pay for them.     I bought them in.     She paid for them."

There was evidence that plaintiff sent proofs of loss to the defendant four or five days after the fire.     March 14th, 1879, the defendant wrote to the plaintiff as follows:

" Upon examination of the papers submitted to the office purporting to be proofs of loss in case of policy No. 301,374, issued to you through the Scranton agent of the company, I beg to give you notice that the same are imperfect, and cannot be admitted or received as proofs of loss owing to the' following defects, to wit: The papers are not sworn to by the party assured.  Second.  The papers allege that the actual cash value of the property destroyed, referred to in schedule A, to be $13,452.27.     This schedule is defective, inasmuch as it does not set forth properly the cost, present sound value and damages on each article therein enumerated, or otherwise support the statement made as to the actual damage, as is required by the terms and conditions of the policy. Third.  The papers are defective, inasmuch as they do not set forth the names of the different parties occupying the premises previous to the fire.     Fourth.  The papers do not state that the interest of the assured was the sole and unconditional ownership of the property alleged to have been destroyed.     The papers submitted being so imperfect and incomplete as that they do not comply with the terms and conditions of the policy, you are therefore notified .that the same are not accepted or received as proofs of loss by this company."

Further proofs were sent by the plaintiff March 22d, 1879.

Counsel for defendant called *J. R. Mulliken*, one of the adjusters, who testified, *inter alia:*

" Question. State whether or not you saw Ackerman at the St. Charles Hotel subsequently.

" Answer. I did.

" Q. State if you made any requests from him, and, if so, what were they?

" A. I stated to Ackerman, in order to arrive at his loss, it would be necessary to have his books and papers of the evidence of amount of stock.

\*     \*     \*     \*     \*     \*     \*

" Q. We wish to know if you made any request of Ackerman at any time when Knowles was present.

" A. Yes, sir.

" Q. State those requests.

" A. Knowles and Goodrich were at the hotel in company with myself when.Ackerman arrived, and his counsel, Mc-

Kune, arrived there with those three books,—those two and another book,—and he proposed to go on at once with the examination of those books and ascertain his loss. I said to Ackerman that I understood his name was David Ackerman, and he was not the party we wanted to see at all. Who was Betty Ackerman? He said Betty Ackerman was Mrs. Betty Ackerman, his wife. I said we desired to transact our business with her. He said he would do just as well; he was her husband; we could not see her, and, if we did, she didn't know anything about it and wouldn't give us any information. Upon consultation with my colleagues, Knowles and Goodrich, we concluded to go on and examine these books.

"Q. State whether you requested David Ackerman to produce Betty Ackerman.

"A. I did, sir."

By counsel for plaintiff:

"Q. Produce Betty?

"A. Yes, sir.

"Q. What did he say?

"A. I have repeated what he said.

\*          \*          \*          \*          \*          \*          \*

"Q. What books and papers did you ask him to produce, if any?

"A. I asked him to produce his stock book, his sales book, his cash book, his ledger, his previous inventory, and all the papers in support of that inventory. He said he could not produce the vouchers in support of the inventory, but would give the names of the parties from whom he purchased goods.

"Q. Well, did he give you the names?

"A. I said: Ackerman, you will be required to produce the original bills or the duplicates thereof. He said he could not do it; I don't know that they will furnish me the bills, but I will give you the names and you can go and see the parties and get the bills. I said it is not my business to get these bills, but inasmuch as they are in New York, and it will be easy for me to see these parties, I will, and I went in pursuance with this arrangement, with Ackerman, to see these parties; I have a list of the names of the parties he gave me.

"Q. Is this the list of names?

"A. That is the original list with my statement on it."

By counsel for plaintiff:

"Q. Whose handwriting is it in?

"A. Goodrich's; Goodrich wrote this list."

Counsel for plaintiff objected to the list.

[The Western Assurance Company of Toronto *v.* Ackerman *et ux.*]

Counsel for defendants propose to prove by the witness on the stand that Ackerman gave him a list of the parties and their places of business from whom he alleged he had purchased the goods inventoried in the inventory of 1st August, 1878, and said to him he did not believe these firms would give him the bills, and directed him to go to these firms and get the bills for the goods which are in the inventory of the 1st of August, 1878; that the witness on the stand did take these names and places of business and go to them and ask them for bills, which they refused to give, because no goods had been sold to Ackerman or the assured, and therefore they were unable to give such bills.

Counsel for the plaintiff objected to the offer as irrelevant, incompetent, and not the best evidence.

The Court: " We will allow this evidence simply this far, that Ackerman gave the names from whom he alleged he had purchased; that this witness went to these parties, and these parties refused to give the bills of invoice. As to their reason it is no evidence. They cannot be bound by conversations given by them in New York. You may show as a fact that he did not buy of them."

An exception was noted for defendants, and at their request a bill was sealed.

Counsel for defendants proposed to give to the witness a list of the names furnished by Ackerman in the handwriting of Ackerman.

" Q. I understand the Court has directed that all we may show is whether you went to any of these places, or whether you could get bills, not to say anything that was said to you by these parties."

The Court: " The only object of this evidence is to account for the non-production of these bills."

" Q. Who furnished this list?

" A. This paper was handed me by Ackerman.

" Q. The whole of it just as it is?

" A. The whole of it as it is; there are some additional names he furnished subsequently.

" Q. State whether you went to any of these firms.

" A. I went to every firm named on this list in the city of New York.

" Q. You went there; what did you ask for?

" A. I want to state that the firm of Johns & Cromer never were in New York, never were found, nobody in New York knew them.

" Q. You could not get the bills?

" A. No, sir.

" Q. To whom did you apply for the bills?

" A. To the firms.

" Q. And you say they didn't give you any bills?

" A. They didn't give me any bills; one firm wanted to kick me outdoors because I came from Ackerman.

" Q. State whether you required Ackerman to produce certified bills; did you ask Ackerman anything concerning certified copies of bills?

" A. I did; I demanded according to the terms of the policy.

" Q. Did you waive it?

" A. No, sir, I didn't waive it."

There was much testimony produced by both plaintiff and defendant as to the value of the property destroyed.

Counsel for plaintiff asked the Court to charge:

" That, by receiving and retaining, without objection, the proofs of loss dated 22d March, 1879, furnished to them by the plaintiff, the defendant has waived any objection he might have thereto, and said proofs are to be taken as received in form and substance."

The Court answered: " We answer this as follows: [The rule of law is that when a company receives proofs of loss and makes objection to them, they are bound by the objections they make, and if these objections are met in the next proofs of loss, and the company then remain silent, they cannot afterwards raise new objections, which existed at the time the first proofs were furnished; if, therefore, the company did retain proofs of loss dated 22d March, 1879, and remained silent in regard to the invoices alleged not to be furnished, and made no objections thereto, the company are to be considered as waiving the defects as to form.] We, therefore, affirm this point."

Counsel for defendant asked the Court to charge, *inter alia:*

" 6. If the jury believe from the evidence that the assured refused to present herself for examination under oath regarding the fire and loss and damage resulting therefrom, as required by the condition of the policy, there can be no recovery, and the verdict must be for the defendant."

Answer of the Court: " As a general proposition, we affirm this point. It was obligatory upon the plaintiff to present herself for examination, if she was demanded, as required by the clause referred to in the policy which we have read to you. But, we say further: the plaintiff, Betty Ackerman, must have had distinct and actual notice that this clause of the policy is brought to bear upon her. She must have distinct notice that the company request her to submit to examination under oath by a person appointed by the company, and then she must have refused to appear. It is

not enough that the agent should say, 'I wish to see Mrs. Ackerman,' and for him to answer, 'He acted for her, and there was no necessity in sending for her,' and the company did not by actual notice, apprising her of the demand, insist upon her appearance. That is not enough; they should say distinctly and give her notice distinctly of what they wanted her for. I do not think, gentlemen, that the evidence in this case is sufficient to bring the defendant or the plaintiff within this clause of the policy. If, however, you differ from us on the evidence in this regard, and the evidence shows you that the plaintiff had distinct notice that the company was demanding their rights under this clause of the policy, then you may find as this sixth point requests us to charge."

The Court further charged the jury, *inter alia:*

"On such a contract the plaintiff sued. She must, in order to recover, satisfy you first that she was, at the time of the fire, the sole and unconditional owner of all the property she seeks to recover for, and that it is covered by the description of the property mentioned in the policy.

"In the first place, she must satisfy you that she has complied with all terms of the contract made obligatory upon her by the language thereof, or that, if she has failed in the compliance, the defendants have waived or excused, or the law has excused her therefrom.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"[Now, has the plaintiff shown a loss under this policy? This is a question of fact for you. In the first place, has the plaintiff proved to your satisfaction that she owned this property? The testimony in this case before you is that which is produced by the policy itself, that which is produced by the witnesses, particularly Mr. Ackerman, Mr. Geiser, and by all the testimony in the case bearing upon the subject of ownership, whatever it may be. We say to you that possession is *prima facie* title, *prima facie* evidence of ownership.] This question is a question of fact for you.

"The next question is, if this plaintiff owned this property, what amount of loss has she sustained?

\*　　\*　　\*　　\*　　\*　　\*　　\*

"[The defendant claims that the goods were not there: the amount of the goods that the plaintiff claims; that the plaintiff has dealt unfairly with them by asserting the stock that did not exist. Have they sustained their case in this particular?] It is all for you.

"The plaintiff took the policy for $2500 concurrent with three others. The plaintiff swears to the amount of his goods; refers to his inventories, invoices, etc., which he says

[The Western Assurance Company of Toronto *v.* Ackerman *et ux.*]

are correct.  As we have said before, the defendant shows by persons, who were in the store shortly before the fire, that they did not consider there was such a stock there as the plaintiff has sworn to.  They show by Mr. Neal, who had a conversation shortly before the fire with Mr. Ackerman, and he said he had a small stock, also by other witnesses that the stock appeared to be small.

"Now, gentlemen, around this point is the main controversy.  It is alleged, on the part of one side, that this plaintiff is perpetrating a fraud upon this defendant; they claim to have shown to you enough to sustain it.  Upon the part of the plaintiff, they claim to have shown conclusively to you the amount of goods that were there, as fully and as completely as it was possible to show the state and existence of the stock of goods that has been destroyed, or mainly destroyed by the fire.  Now, all the circumstances surrounding this is for you.  Use such judgment as men of common sense use in such a matter."

June 16th, 1881.  Verdict for the plaintiff for $2471.32, on which judgment was subsequently entered.

The defendant then took out a writ of error, assigning as errors the portions of the charge within brackets, the answer to defendant's sixth point, the answer to plaintiff's point, and the rejection of the evidence as above.

*Lemuel Amerman* and *Henry E. Hess,* for plaintiff in error.

1.  No recovery can be had upon a policy against loss by fire, unless the insured has an interest in the subject insured at the time of the loss, and that interest must be averred and proved : Howard *v.* Albany Ins. Co., 3 Denio, 301 ; Murdock *v.* Chenango Ins. Co., 2 Comst., 210; Fowler *v.* New York Ins. Co., 26 N. Y., 422; Illinois Fire Ins. Co. *v.* Marseilles Mfg. Co., 1 Gilman, 236.

A commission-merchant, a storekeeper, a wife may be in possession of property, and not be the owner.

2.  "The defendant claims that the goods were not there, the amount of the goods that the plaintiff claims ; that the plaintiff has dealt unfairly with them by asserting the stock that did not exist.  Have they sustained their case in this particular?" could but mislead the jury.  It was equivalent to saying that the defendant must prove that the stock claimed for was not there.  The defendant is liable for the full amount of the policy, unless they show you that the stock they insured in the policy was not in the fire, or not destroyed.  The assured must not only prove that there has been a loss, but he must also prove its amount.

3.  The request to the agent of the assured to produce her

[The Western Assurance Company of Toronto v. Ackerman *et ux.*]

was absolute and certain. The refusal was just as absolute and certain.

4. Where a policy contains a clause requiring the assured to produce " certified copies of all bills and invoices, the originals of which have been lost," the condition must be complied with, or it must be shown that it was impossible for the assured to do so, or that its performance was waived: O'Brien *v.* Ins. Co., 63 N. Y., 111.

These certified copies of bills and invoices the learned judge confused with the proofs of loss, and instructed the jury that if no objection was made to the proofs of loss, and having remained silent in regard to the invoices alleged not to be furnished, the company are to be considered as waiving the defects.

5. The Court refused to admit the answers of the parties to Mullikin.

It was the assured's duty to furnish these bills and invoices. The company did not relieve her from this obligation, but expressly told her that it was not the business of the company. Mullikin acted for the assured in this matter. This was the only effort of the assured to obtain them. In this she failed. No goods having been sold to Ackerman or the assured made it impossible for her to obtain them. The reasons why bills and invoices could not be furnished by the parties from whom the assured alleged she had purchased through her agent in this matter, would have been the most conclusive evidence of the fraudulent claim of the assured.

*E. N. Willard*, for defendant in error.

The effecting of a policy by the assured is *prima facie* evidence of interest: Phillips on Insurance, § 2123.

Proof of an application for insurance and of a policy issuing thereon, both of which describe the property insured as the property of the plaintiff, is *prima facie* evidence of title, and of an insurable interest in the plaintiff in an action upon the policy : Nichols *et al. v.* Fayette Mutual Fire Ins. Co., 1 Allen, 63 ; Ins. Co. *v.* Staib, 4 Ins. Law Journal, 398 ; Robertson *v.* French, 4 East, 130 ; Thomas *v.* Foyle, 5 Espinasse, 88 ; Ins. Co. *v.* Chicago Ice Co., 36 Md., 102 ; Ins. Co. *v.* Berry, 8 Kansas, 159 ; Fowler *v.* Ins. Co., 23 Barb., 150.

The retention of the proofs, without making specific objections to them, is in law a waiver of all defects : Wood on Fire Insurance, 719.

MARCH 6TH, 1882.—PER CURIAM : Possession of personal property is *prima facie* evidence of ownership, and the policy

[Bott *v.* Stoner.]

being in the name of the wife, this with the possession was, as against the defendants, *prima facie* evidence that she was the owner.   It was certainly a fact for the jury, and fairly submitted to them, whether the stock of goods insured did in fact exist.   There was no evidence, as the learned judge rightly held, that Mrs. Ackerman had refused to submit herself to examination under oath. The answer to the plaintiff's point, as to waiver, was undoubtedly right, as was the ruling of the learned judge in the rejection of the evidence. The agent, who inquired of the persons in New York, was the agent of the company, and there was nothing in the plaintiff's reference to them, which bound him by their answers. So far as the evidence was rejected, it was merely hearsay.

Judgment affirmed.